Good morning, Your Honor. Frank Weiser on behalf of the Appellants Galal. I suppose I should take up the first question that the Court had asked previously. Well, it's actually a question for Mr. Fudge. If you want to address it, that's fine. I believe the Long Beach Municipal Code does have language in there that authorizes or puts a constraint on the officials, and that's, I believe, Long Beach Municipal Code 1820.50, which I think talks about entry onto property upon demand of the building official. And I believe we also cited a section in the Long Beach Municipal Code that talks about the issue of a final policy decision maker, that in this case, Wiersma and Durheim were the policy final decision makers, and that after the Long Beach City Council had already held all their hearings, they were the ones who were vested with the ultimate discretion to obtain a warrant or not to obtain a warrant. I believe under Pembauer, they would then be the ones who are ultimately given the discretion to do so, and that would be the type of policy that would attach under Monell. The question that had to come to you as you reviewed this record, what difference did the absence of a warrant make in this case? Well, I think, first of all, the district court found that under Connor, it was per se unreasonable under this circuit's previous case law. So don't you have to go on expectations of privacy that you expected, or that you, a warrant usually, you're in your house and somebody's coming barging in, and you want to say you can't do it? But here, the property was vacant, abandoned, had been condemned, ready for demolition without a doubt. In fact, the clients had asked, had started to demolish it themselves. So we get to a situation where you say, uh-oh, we got something, no warrant. And I'm wondering what, on this record, what difference did it make? First of all, Your Honor, I take issue, two points. So Dow specifically, although it was not a case that actually decided the warrant requirement, so Dow specifically addressed in this question of whether, in fact, the nonjudicially enforced eviction of tenants by sheriffs was a seizure under the Fourth Amendment, I'm asking you to tell me what it is. What was it? What was the harm? I'm not having any question. Roberts. Pardon me. Property. Yes. That's correct. This was a property interest that was demolished, was seized by the Government. And so Dow indicates that one does not need a privacy expectation in that type of a context for purposes of requiring a warrant. And that would be one strong argument that it's per se unreasonable. But even moving to the privacy expectation, as I read Conner, Conner does impose, and that is the law of the circuit at this point, Conner does impose a per se unreasonable requirement, even where a legislative council has already determined that the property is a nuisance and would in effect have authorized a demolition of the property. What the legislative determination does is substitute or give the government the probable cause determination. But there still has to be judicial oversight. But Conner was based on a privacy concern? Yes. Conner did indicate that. Probably breaking the close, something like that. That's correct. So it was based on privacy? That's correct. But we contend even on this record there was a privacy expectation. I believe the Michigan v. Tyler case and the other cases we've cited indicated that you can have a privacy expectation in a legislatively declared property that has been declared a nuisance. In this case, the Galals had been negotiating to either improve the property or to demolish it themselves, which would have reduced costs. But it was their determination, it was their choice to do so, not the government's. Well, they blathered on and delayed the government forever. And one can practically understand that what they were really doing was nothing. I thought that one of the problems was in terms of privacy, that the difficulty was all kinds of people were getting in and out of there. I mean, people didn't belong there, were there. Vagrants were living in the buildings. That doesn't sound like very heavy-duty privacy stuff. I mean, I don't think vagrants just wander into my house. I mean, I do think I want to be more private than that. It may have been a diminished form of an expectation of privacy, but I still think that the issue, the ultimate touchstone of whether they did have some kind of expectation, is an ultimate question of fact. And I think on this record where there was correspondence going back and forth between the city attorney's office and their counsel and what they were going to do with the property and there had not been an ultimate decision to demolish the property, those are questions that do not just authorize the government to just go in at will and decide that one day you've reached the agreement and now we're going to demolish the property. It might be a question of fact, but it's an objective test, right? So, say, here are all the facts. Objectively, do they really have a reasonable expectation of privacy? The government said, no, we don't think so. I think under the circumstances where they were still negotiating with the government as to what they were going to do with the property, there is a reasonable expectation of privacy. It may have been somewhat diminished, but it was still a reasonable expectation of privacy. With that being said, unless there are any further questions, I'll reserve it. I do have a question, counsel. This is, as it comes in the posture before us, you do not have a 1983 action against any individuals. Is that correct? That's correct. Only against the city. That's correct. And so whether Mr. Durheim personally violated city policy is not before us. The only question here is whether the city of Long Beach had a policy of entering into property in violation of the Fourth Amendment by, even though they had probable cause to enter the property, by failing to get a warrant. Correct. This is purely a Monell claim. Now, do you have any other evidence that this is a policy by the city of Long Beach? Well, first of all, this had gone up to the city of Long Beach city council. And then after, as we cited in our reply brief, there is a municipal code section which says that it's unreviewable. The discretion that's given to these building officials are, at that point, unreviewable. In fact, the municipal code says no action can be brought against them or the council for any actions taken. And so our position is, under Pembauer, these officials were the ones who had the ultimate discretion to determine whether, in fact, they would get a warrant or not. Meaning Durheim? Durheim and Wurzla. And that would be the policy. That would be one way to reach Wurzla. Right. But, I mean, can you offer any evidence that this actually was the policy rather than just a slip-up in this case? Well, when the Court is saying whether, in fact, this is policy, Pembauer says you can have a you can always look at something and say, well, it's a slip-up. It was no more than negligence. And that is not a policy that we're going to hold the city responsible for. But what I'm saying is, is that under Pembauer, if these officials were the ones who were the final decision-makers, if they were the ones who, quote, slipped up, if they were the ones who hold make the city responsible under Pembauer. But a one-time slip-up is not this is that might be that might be fine if you've got if you still had a 1983 action against Wurzla and Durheim. But you don't. You have a you have a suit against the city, and no evidence that this is anything other than an aberration in the city's in the city's behavior. Well, that's where I read Pembauer perhaps differently. As I read Pembauer, it is the person who is given the final decision, the one who is vested with the final authority. And that is. But under your under your under your theory, then, that would mean that the city would always be liable so long as somebody who had discretion to act on behalf of the city slips up. Not always just discretion. Under Pembauer and under the cases, the Ninth Circuit cases, it's the discretion that is an unreviewable discretion. Do you have do you have any evidence that that Mr. Durheim and Mr. Wurzla did this deliberately? In other words, they deliberately avoided the code in order to tear down these buildings without troubling themselves with getting a warrant? Well, I think their intentional actions are spoken by the fact that they just went forward and did so. I mean, I don't think one can just simply say it's negligence. In fact, I think all their declarations talk about the fact that this was the city, that they were doing this on behalf of the city. So I don't see how one can just say it was purely negligence. But from a policy standpoint, I'm at a loss to understand why even an individual building official can't bind the city if, in fact, that individual is the final policymaker, if, in fact, the code allows that person to be the one who makes the ultimate decision upon the city. I'm just trying to figure out how we determine how a city makes a policy if the policy only occurs in one case and we have no evidence that this was sort of deliberately done in your case. Pembauer doesn't require that the city make a policy. Pembauer simply says that it can be a single decision by a final policymaker or a final decisionmaker. If, in fact, the city has vested ultimate discretion in that final decisionmaker, then the city is bound. It's not a question of the city creating a policy in that respect that with respect to warrants. As long as that person is the one who has the ultimate power to do so and bind the city, the city can be bound. I also would say one last thing. We talked about City of Canton v. Harris. Connor has been the law in this circuit since 1990. If Connor is good law and, in fact, an entry onto a property is per se unreasonable, I think that's pretty strong evidence that it's fairly obvious that the city has not trained their officials in a sufficient manner to comply with Connor. So even if one wants to take the tact that this was some slip-up by Durheim and Wiersma, the city can still be held responsible for not training their officials in the requirements of Connor in the law of this circuit. Okay. Thank you. Good morning. I'm Randall Fudge on behalf of the city of Long Beach. What we are looking at here is, in the context of the Fourth Amendment, whether this constituted an unreasonable search and or seizure. And in looking at that, we look at two things. The expectation of privacy in the structure and also the overall reasonableness of that. I would disagree with counsel in that Connor does not indicate that this is a per se unreasonableness. Indeed, Connor is distinguishable on the facts of this case. And that court held that the Connors had a reasonable expectation of privacy in their enclosed fenced yard. Well, you say expectation of privacy. Again, the Supreme Court finally in Soto made it clear to all the courts who were wandering off thinking that the privacy interest was the only thing in the Fourth Amendment, that it also protects property per se. So you don't need to have an expectation of privacy if somebody is going to come and destroy your property. Strikes me under the Fourth Amendment. So I don't know that that's what the only operative thing here. Sure, they may have a lousy expectation of privacy, but they also have a piece of property. And you guys destroyed it. And the question is, did the Fourth Amendment protect property destruction without a warrant? Isn't that the question? Well, I guess that is the question, but also I don't think that Soto necessarily overruled Katz and or Michigan v. Clifford. We have to look at everything in the context, in the context of reasonableness, and within that we can also look into did they have any expectation of privacy also can come into that analysis. But the distinction between this property and the property in Freeman, which is a Fifth Circuit case, which is on all fours in this case, is that the Connor property was their private residence, as opposed to a open, accessible, vacant apartment building, which is the same as was in Freeman. And in Freeman they found that the overall reasonableness in the analysis under Soldell indicates that that was a proper warrantless seizure in that case. Additionally, a case addressed in Freeman is Herock v. City of Omaha, which is H-R-O-C-H v. City of Omaha, Fourth F-Third 693, an Eighth Circuit case, which is addressed in the Freeman decision. And in that case they also held, under facts indistinguishable from the present case and from Freeman, that that did not constitute an unreasonable warrantless seizure in that case, and that was a dairy property that had also been condemned. And in that case the court held that the dairy site used the buildings only to store property selling from other demolitions, and he took no steps to claim or protect whatever personal property was in those buildings when he knew the demolition was imminent. Herock's Fourth Amendment interest in these premises was negligible because he failed to take normal precautions to maintain his privacy. In these circumstances, the Fourth Amendment analysis and the due process analysis are similar, citing GM Leasing v. United States. On the facts of this case, we conclude that the defendant's actions in implementing the city's condemnation order did not constitute an unreasonable seizure in violation of Herock's Fourth Amendment rights. The city's conduct was reasonable in light of the careful balancing of the governmental and private interests that Soldell requires. And that's the same in this case also. Getting to the 1983 action, and we only get to the 1983 action if there is a determination that there has been a Fourth Amendment violation, which we assert there has been no Fourth Amendment violation in this case. As the court has stated, the local government cannot be held liable under 1983 unless the alleged action implements an official policy. Here, the city had a policy for obtaining warrants prior to demolition that is set forth in the Declaration of Dale Wiersma and, I believe, in the Declaration of Dean Durnheim. Dean Durnheim is not the ultimate policymaker for the city. He is a subordinate employee. I believe the Declaration stated he was subordinate to Mr. Wiersma, who was subordinate to the building official, who was subordinate to the city council. He is not the ultimate policymaker for the city. If he were the final policymaker in the sense that Penbower, which I think was an assistant county council or something, who reported to the county council, who reported to the city, if he were the final policymaker in that sense, in the Penbower sense, then his single act would be sufficient to visit the city with 1983 liability. Isn't that right? Under Penbower, yes. If somebody is the ultimate policymaker, they can be held accountable for a one-time event. Even if they are, in another sense, subordinate employees, which I take it the assistant, county council was, even if you're a subordinate employee, you could conceivably be the final policymaker in a particular instance. Correct? I forget whether or not he was subordinate in Penbower, whether or not he was subordinate to other entities or not, but I think the question becomes whether or not his decision is reviewable, is under City of St. Louis's practice, which states that a policy, a subordinate employee who is constrained by policy, not of his own making, is not the ultimate policymaker in that case. And here, the declaration set forth that the policy of obtaining warrants was set down by supervisory employees, and Mr. Durnheim was bound by that policy. Also, citing City of St. Louis's versus Praptonick, his decision was subject to multiple levels of review. And this is where Mr. Weiser was getting into that. But I think a distinction needs to be made over Mr. Weiser's analysis. The actions of the building official, any action of the building official, may be appealed to the Board of Examiner's Appeals and Condemnation, the BAC. The decision of the BAC, any decision of the BAC may be appealed to the Long Beach City Council. Any decision of the City Council may ultimately have judicial review of that pursuant to 1094.5 of the California Code of Civil Procedure. Mr. Weiser indicates that this had gone up to the City Council. That had gone up to the City Council on the initial determination of whether or not it was a substandard building and subject to demolition, not on the issue of whether or not a warrant should be obtained. Now, there's been some mixing of Durnheim and who's his boss, Mr. Wiersma? Yes. Is there any evidence that the boss said go do it without a warrant? I know that he did it without a warrant, but is there any evidence that Durnheim did it without a warrant? Or any evidence that the boss told him to do that? Told him not to get a warrant? No. Specifically in the declaration of Dean Durnheim and Dale Wiersma, or I think Dean Durnheim, there was discussions regarding obtaining a warrant, and there were two properties to be demolished. As to one, there was a specific discussion between Mr. Wiersma and Mr. Durnheim where Mr. Wiersma advised Mr. Durnheim to get a warrant to demolish that property. In the other property, the one at issue here, there was no such discussion between the two of them, but specifically Mr. Wiersma did not direct him not to get a warrant. Right. As such, in this case, there is, based on the specific facts of this case, there is no need to get a warrant in this case. However, even that misstep, and that's what it was, a misstep, does not constitute liability for the city under 1983. Thank you. Thank you, Mr. Fudge. Just several points on the record, Your Honors. On page 16 of my open brief, I did state there was a declaration given by Wiersma declaring that Durnheim was responsible, quote, for preparing the case for presentation to the Board of Examiners, Appeals, and Condemnation, communicating with the property owner's representative, and obtaining search warrants for the purpose of demolition if there became a necessity to obtain such a warrant. Plus, Wiersma indicates that he was directly supervising Durnheim and was familiar with the facts of the case. So I take issue with the fact that we don't have any kind of a record here that Wiersma was not overlooking it or that Durnheim did not have the ultimate discretion to obtain a warrant if he decided a warrant was necessary or not to obtain a warrant if he decided it wasn't necessary. That, coupled with the municipal code sections, one of the municipal code sections I cited earlier, that gives him the right to go onto the property upon demand. And, as I said, there is a municipal code section that talks broadly, not only on the specific facts, that once the city council has held their general hearings, the ultimate discretion, and it's in my reply brief at page 11, Long Beach Municipal Code section 18.20.240 gives the ultimate discretion for the employee to review or enjoin to make the ultimate decision in terms of how the city council order is implemented. With respect to Pembauer, I cited the case Davis v. Macon County, which is a case in this circuit. Roberts. Counsel, you're over your time. If there's one last point you'd like to make, but this is the – if it's just cases, cases are in your brief. I just want to say one last point. Pembauer is not about the fact there is a policy. Pembauer is about the final decision maker being able to establish binding policy. Thank you. We thank both counsel for their argument. We'll next take up the case of Pony v. Miller.
judges: Farris, Fernandez, Bybee